| | |
|---|---|
| 1 | Kevin A. Adams, State Bar No. 239171 |
| 2 | kadams@mortensontaggart.com |
| | Sandra G. Gibbs, State Bar No. 321677 |
| 3 | sgibbs@mortensontaggart.com |
| 4 | **MORTENSON TAGGART ADAMS LLP** |
| | 300 Spectrum Center Drive, Suite 1200 |
| 5 | Irvine, California 92618 |
| 6 | Telephone: (949) 774-2224 |
| | Facsimile: (949) 774-2545 |
| 7 | |
| 8 | Attorneys for YI-SHENG FANG and |
| | HECHALOU INTERNATIONAL LLC |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| YI-SHENG FANG, an individual; and HECHALOU INTERNATIONAL LLC, a Delaware limited liability company, <br><br> Plaintiffs, <br><br> vs. <br><br> HECHALOU US LLC, a California limited liability company; and JOHANNA CHEN, an individual, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR** <br> (1) **Trademark Infringement – 15 U.S.C. § 1114(1);** <br> (2) **False Designation/Unfair Competition – 15 U.S.C. § 1125(a);** <br> (3) **Common Law Trademark Infringement;** <br> (4) **Violation of Cal. Bus. & Prof. Code §§ 17200** *et seq.* |

COMPLAINT

Plaintiffs Yi-Sheng Fang ("Fang") and Hechalou International LLC ("HI LLC"), by and through undersigned counsel, submit this Complaint against Defendants Hechalou US LLC ("HUS") and Johanna Chen ("Chen") for damages and injunctive relief enjoining Defendants from infringing Plaintiffs' trademarks and service marks as set forth in more detail below:

## NATURE OF THE ACTION

1. This action arises out of the unauthorized use of Plaintiffs' valuable trade name, trademarks, and service marks by Defendants, who previously operated as licensees but who elected to rescind their license agreement.

2. Plaintiff Fang is the owner of the trade name HECHALOU and certain trademarks and service marks that have been licensed to third parties for use in the operation of HECHALOU-branded specialty tea shops in Taiwan and in the United States (collectively, the "Marks"). Hechaloutea Co., Ltd. ("HCL") is a Taiwanese company that has for several years operated or franchised others to operate dozens of specialty tea shops in Taiwan pursuant to a license from Fang.

3. In 2021, Defendant Chen approached Fang requesting the right to operate HECHALOU-branded tea shops in the United States. In preparation for this expansion, Fang submitted an application to the United States Patent and Trademark Office ("USPTO") on January 19, 2022 (the "2022 Application") for a logo containing the Chinese characters for HeChaLou and the literal element "TRADE MARK HECHALOU."

4. In April 2022, HCL entered into a Regional Distribution Agreement (the "Agreement") with Chen's company, HUS, authorizing HUS to operate, and to franchise others to operate, HECHALOU-branded tea shops in southern California and in Arizona. The parties to the Agreement explicitly agreed that Fang is the owner of the HECHALOU Marks, including the logo containing the Chinese characters for HeChaLou and the trade name "HECHALOU." The parties also agreed that HUS's use of the HECHALOU Marks was a limited license, conditioned on its compliance

1. with the terms of the Agreement. Upon termination of the Agreement for any reason, HUS agreed that it would "no longer operate business in the name of the Franchise," and was required to immediately cease use of the HECHALOU Marks and "remove any sign, menu or text that refers to 'Hechalou' or 'Hechalou Tea.'"

5. On information and belief, Defendants began operating their first HECHALOU-branded specialty tea shop pursuant to the Agreement on or about March 1, 2024 in Lakewood, California. Defendants began operating their second HECHALOU-branded specialty tea shop pursuant to the Agreement in or about March 2025 in Alhambra, California. Defendants have also sold goods and services under the HECHALOU Marks at several other locations.

6. Due to their limited knowledge of United States and California law, Plaintiffs did not realize that the Agreement reflected a statutory franchise. Once this was brought to their attention, HCL approached the California Department of Financial Protection and Innovation (the "DFPI"), the agency that regulates franchises in California, to resolve the matter.

7. With the DFPI's approval, on March 12, 2025 HCL offered Defendants the following options: (a) rescinding the Agreement and ceasing to operate as a HECHALOU-branded tea shop; (b) continuing to operate under the terms of the Agreement; or (c) operating under a new franchise agreement with HI LLC, which has been approved by the DFPI to offer and sell HECHALOU franchises in California.

8. On April 18, 2025, HUS notified Plaintiffs that it had elected to rescind the Agreement. Yet, although Defendants no longer have a license to operate under the HECHALOU trade name and Marks, they continue to operate under them, disregarding Plaintiffs' demand to cease use of the HECHALOU trade name and Marks.

9. Defendants' unauthorized use of the HECHALOU trade name and Marks (i) infringes upon Fang's trademarks, (ii) presents an immediate threat to the goodwill developed under those trademarks, and (iii) creates customer confusion as

to the source and sponsorship of the goods and services offered, all in violation of the Lanham Act, 15 U.S.C. § 1051 et seq.

10. Additionally, Defendants' unauthorized use of the HECHALOU Marks effectively prevents Plaintiff HI LLC from selling franchises in California and elsewhere in the United States, as their unlawful use disincentivizes prospective franchisees from investing in the brand. Such conduct constitutes unfair competition under Cal. Bus. & Prof. Code § 17200 *et seq*.

11. Plaintiffs file this action seeking damages and an injunction ordering Defendants to immediately and permanently cease their infringement.

## THE PARTIES

12. Fang is an individual residing in Taiwan (Republic of China). Fang is the owner of the trade name HECHALOU and related trademarks used in connection with the sale of specialty tea-based beverages and the operation of tea houses.

13. HI LLC is a Delaware limited liability company with its principal place of business at 430 South Garfield Avenue, Suite 489, Alhambra, California 91801. HI LLC is the franchisor of HECHALOU-branded specialty tea shops in the United States.

14. HUS is a California limited liability company with its principal place of business at 400 West Colorado Street, Suite 301, Glendale, California 91204.

15. Chen is an individual residing in California. Chen owns HUS.

## JURISDICTION

16. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Additionally, this Court has supplemental jurisdiction over Plaintiffs' related state law claims pursuant to 28 U.S.C. § 1338(B) and 28 U.S.C. § 1367.

17. This Court has personal jurisdiction over Defendants because both Defendants are residents or domiciliaries of California.

///

18. The United States District Court for the Central District of California is the proper venue for this action because Defendants are located in this district, Defendants have transacted business and committed unlawful acts in this district, and a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL BACKGROUND

19. Fang is the owner of the HECHALOU trade name and Marks, which have been used continuously since at least 2016 to operate HECHALOU-branded specialty tea shops in Taiwan and in the United States. HECHALOU-branded specialty tea shops sell a variety of beverages, including Taiwanese-style milk tea, boba tea, and coffee, as well as specialty food items.

**The Regional Distribution Agreement**

20. In 2021, Chen approached Fang in Taiwan and requested a license to operate HECHALOU-branded specialty tea shops in the United States.

21. During the negotiations, and in an effort to protect his valuable rights in the HECHALOU trade name and Marks in the United States, Fang submitted an application in the USPTO on January 19, 2022 to register the HECHALOU logo for the operation of a tea shop. The logo contained the Chinese characters for HeChaLou and the literal element "TRADE MARK HECHALOU" (depicted below):



22. The 2022 Application, assigned Serial No. 97226597, remains pending, as do two other trademark applications filed by Fang in May 2024. In April 2025, Fang's application for the Character Mark—which is embedded into the center of the logo—was accepted for registration on the Principal Register, assigned Reg. No. 7,750,969.

23. In 2022, Fang's affiliate HCL was the exclusive sublicensor of the HECHALOU Marks, authorized by Fang to operate and to sublicense third parties to operate HECHALOU-branded specialty tea shops.

24. Following a period of negotiations, HCL entered into the Regional Distribution Agreement with HUS, which is owned by Chen, on or about April 7, 2022. The Agreement outlined various terms and conditions for HUS to open and operate (and franchise third parties to open and operate) HECHALOU-branded specialty tea shops in southern California and in Arizona.

25. Among other things, the Agreement reflects the parties' explicit acknowledgment that Fang is the exclusive owner of the HECHALOU Marks, including the logo containing the Chinese characters for HeChaLou and the trade name "HECHALOU." The parties also agreed that HUS's use of the HECHALOU Marks was a limited license, conditioned on its compliance with the terms of the Agreement. Upon termination of the Agreement for any reason, HUS agreed that it would "no longer operate business in the name of the Franchise," and was required to immediately cease use of the HECHALOU Marks and "remove any sign, menu or text that refers to 'Hechalou' or 'Hechalou Tea.'"

**The Marks**

26. Fang is the owner of the following marks, among others:

| USPTO Identifier | Date of Application or Registration/ Status | Int'l Class and Goods/Services | Mark |
| --- | --- | --- | --- |
| Ser. No. 97226597 | Application filed Jan. 19, 2022<br><br>Application pending | 043 (Restaurant services, namely Bubble tea shops; Catering of food and drinks; Coffee shops; ice cream parlors; Providing of food and drink via a mobile truck; Serving of food and drink/beverages; Snack bar services; Teahouse services) | 鶴茶樓 HECHALOU |

| USPTO Identifier | Date of Application or Registration/Status | Int'l Class and Goods/Services | Mark |
|---|---|---|---|
| Ser. No. 98553674 | Application filed May 16, 2024<br><br>Application pending | 043 (Restaurant services, namely Bubble tea shops; Catering of food and drinks; Coffee shops; ice cream parlors; Providing of food and drink via a mobile truck; Serving of food and drink/beverages; Snack bar services; Teahouse services) | HECHALOU |
| Ser. No. 98560700 | Application filed May 21, 2024<br><br>Application pending | 030 (Tea-based beverages; coffee-based beverages; cocoa-based beverages; chocolate-based beverages; bubble tea; tea; coffee; candies; cookies; breads; cakes; instant dessert puddings; dessert puddings; instant pudding mixes; puddings for use as desserts; ice cream; sorbet; desserts, namely, taro balls consisting primarily of flour and mashed taro being processed vegetables; sago; tapioca pearls) | 鶴茶樓 HECHALOU |
| Reg. No. 7,750,969 | Registration granted Apr. 8, 2025 | 043 (Bar services; Bubble tea shops; Café services; Coffee shops; Juice bar services; Restaurant services; Serving of food and drink/beverages; Snack bar services; Take-away restaurant services; Tea bars; Tea rooms; Tea shops; Teahouse services) | 鶴茶樓 |

27. In addition to the above marks, Plaintiffs have developed a proprietary look and feel for their HECHALOU-branded specialty tea shops, including specialized décor, posters, menus, and signage. Together with the HECHALOU Marks, this trade dress serves to identify Fang and his affiliated entities as the source of the goods and services sold to the public.

28. The HECHALOU Marks are distinctive, both inherently and because they have acquired distinctiveness through continuous use over time. In addition, the Character Mark is entitled to a presumption of inherent distinctiveness by virtue of its

federal registration on the Principal Register in the USPTO.  All of the HECHALOU Marks and the HECHALOU trade name have become associated with the business of selling specialty Taiwanese-style milk tea and other beverages, as well as specialty food items.

29. Plaintiffs have expended substantial time, money, and resources marketing, advertising, and promoting their specialty Taiwanese-style goods and services offered under the HECHALOU trade name and Marks.

30. HI LLC serves as the franchisor for current and potential HECHALOU-branded tea shop franchisees in the United States.  Through its agreements with its franchisees, HI LLC imposes certain obligations and retains certain rights to help ensure the protection of the HECHALOU Marks.

31. The established HECHALOU brand allows Plaintiffs to continue to successfully build their franchise system, building goodwill for the brand.  Therefore, Plaintiffs have a vital economic interest to protect and defend the HECHALOU Marks.

**Defendants' Operation Pursuant to License**

32. On information and belief, Defendants began operating their first HECHALOU-branded specialty tea shop pursuant to the Agreement on or about March 1, 2024 in Lakewood, California.  Defendants began operating their second HECHALOU-branded specialty tea shop pursuant to the Agreement in or about March 2025 in Alhambra, California.  Defendants have also sold goods and services under the HECHALOU Marks at several other locations.

33. In September 2024, counsel for Defendants informed HCL that the Regional Distribution Agreement met the statutory definition of a "franchise" under federal and California law.  Defendants demanded "compensation for damages caused by [HCL's] interference with [Defendants'] business operation and indemnification for loss in goodwill" due to HCL's failure to comply with applicable franchise registration and disclosure laws.

///

34. Defendants also informed HCL that they had filed an application in the USPTO to register their own competing trademark for HECHALOU (Ser. No. 98504949). Despite having explicitly agreed that Fang was the exclusive owner of the HECHALOU Marks, and despite the fact that Defendants were, at that time, operating their HECHALOU-branded specialty tea shop pursuant to a limited license granted by Fang and his affiliate, Defendants declared to the USPTO, under oath, that they "believe[] that the applicant [HUS] is the owner of the trademark/service mark sought to be registered."

35. Due to their limited knowledge of United States and California franchise law, Plaintiffs did not realize that the Agreement reflected a statutory franchise. Once this issue was brought to their attention, however, HCL contacted the DFPI to self-report the infraction and request guidance to resolve the matter.

36. The DFPI advised HCL to prepare a Notice of Violation, including an offer of rescission, to serve on Defendants. The DFPI also advised Plaintiffs of the steps that were needed in order to sell franchises in California. HH LLC prepared the required disclosure documents for the DFPI's review; on April 8, 2025, the DFPI approved the HH LLC's franchise offering.

37. On March 12, 2025 HCL offered Defendants the following options: (a) rescinding the Agreement and ceasing to operate as a HECHALOU-branded tea shop; (b) continuing to operate under the terms of the Agreement; or (c) operating under a new franchise agreement with HI LLC, which has been approved by the DFPI to offer and sell HECHALOU franchises in California.

**Defendants Rescind Agreement But Refuse To Cease Use Of Marks**

38. On April 18, 2025, HUS notified Plaintiffs that it had elected to rescind the Agreement, thereby extinguishing the rights and obligations of the parties under the Agreement. As a result, Defendants no longer have any right or license to use the HECHALOU trade name and Marks.

///

39. Yet, despite Plaintiffs' demand that Defendants cease further use of the HECHALOU trade name and Marks, Defendants brazenly continue to operate their competing tea shop businesses using the HECHALOU trade name and HECHALOU Marks, misappropriating Plaintiff's goodwill for their own benefit.

40. Defendants' continued use of the HECHALOU Marks is likely causing confusion between authorized HECHALOU-branded specialty tea shops and Defendants' unlicensed stores. This is especially true because Defendants are selling the same goods and services as Plaintiffs and their authorized licensees, to the same class of customers.

41. Additionally, Defendants' actions are likely to cause Plaintiffs' customers and the purchasing public to mistakenly believe that Defendants' operation is authorized, sponsored, or approved by Plaintiffs and that such services offered by Defendants are subject to the same high standards, quality, and regulation as required by Plaintiffs through their affiliated franchisees.

42. The unlawful use of the HECHALOU Marks in connection with the distribution and sale of goods and services similar to those offered by Plaintiffs and Plaintiffs' franchisees constitute a false designation of the source of origin of such goods and services and falsely describes and represents such goods and services.

43. Defendants' operations have injured and are likely to continue to injure the reputation and goodwill of Plaintiffs and Plaintiffs' franchisees. These activities of Defendants further injure Plaintiffs in that Defendants do not pay any royalties or fees for their unlawful use of the HECHALOU Marks.

44. Defendants' conduct has damaged Plaintiffs' business and goodwill, and unless restrained by this Court, will continue to damage Plaintiffs. Injunctive relief and monetary damages are warranted and authorized by law.

///

///

///

# FIRST CLAIM FOR RELIEF

## Trademark Infringement – 15 U.S.C. § 1114(1)

45. Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs of its Complaint as though fully set forth herein.

46. Defendants' unauthorized use of the HECHALOU trade name and HECHALOU Marks, as alleged herein, is likely to deceive consumers as to the origin, source, sponsorship, nature, legitimacy, or affiliation of Defendants' goods and/or services, and are likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Plaintiffs and/or that Defendants' services are provided, authorized, endorsed, or sponsored by Plaintiffs, or that Defendants are in some way affiliated with or sponsored by Plaintiffs. Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

47. By reasons of Fang's prior adoption and use of the HECHALOU trade name and Marks and his federal registration in the Character Mark, Fang's rights are superior to and supersede any rights Defendants may have in the HECHALOU Marks.

48. Defendants have committed the foregoing acts of infringement with full, actual knowledge of Fang's prior rights in the HECHALOU Marks and with the willful intent to cause confusion and trade on the goodwill associated with them.

49. On information and belief, Defendants' goods and services are identical or nearly identical to those sold by Plaintiffs and/or their authorized licensees.

50. Defendants offer their goods and services to the same class of customers to whom Plaintiffs and/or their authorized licensees offer their goods and services.

51. In light of the virtually identical nature of the parties' trade names, the confusing similarity caused by the use of the HECHALOU Marks by the two parties, and the substantially similar channels of trade and classes of customers of the parties' goods and services, Defendants' continued use of the HECHALOU Marks in connection with the sale of goods and services is likely to cause confusion, mistake,

and deception among purchasers and the public generally, leading them to believe, falsely, that Defendants' goods and services are those of, sponsored or approved by, or in some way connected with Plaintiffs, to the irreparable injury of Plaintiffs and the public.

52. Despite such likelihood of public confusion, mistake, or deception, Defendants have willfully continued their use of the HECHALOU Marks, disregarding Plaintiffs' demands that they do so.

53. Defendants' infringement of the HECHALOU Marks has been and continues to be deliberate, willful, and wanton, making this an "exceptional case" within the meaning of 15 U.S.C. § 1117.

54. Plaintiffs are entitled to recover from Defendants damages allowed under 15 U.S.C. § 1117, including but not limited to compensatory damages suffered as a result of Defendants' acts of infringement, disgorgement of Defendants' profits, enhanced profits or damages, reasonable attorneys' fees, costs, and prejudgment interest.

55. Notwithstanding Plaintiffs' entitlement to monetary relief, Defendants' infringement of the HECHALOU Marks has also caused and will continue to cause irreparable injury to Plaintiffs if not restrained by this Court. Plaintiffs have no adequate remedy at law and therefore seek preliminary and permanent injunctive relief under 15 U.S.C. § 1116.

## SECOND CLAIM FOR RELIEF

**False Designation/Unfair Competition – 15 U.S.C. § 1125(a)**

56. Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs of its Complaint as though fully set forth herein.

57. Defendants' unauthorized use in commerce of the HECHALOU trade name and Marks is likely to deceive consumers as to the origin, source, sponsorship, nature, quality or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold,

authorized, endorsed, or sponsored by Plaintiffs, or that Defendants are in some way affiliated with or sponsored by Plaintiffs.

58. Defendants' unauthorized use in commerce of the HECHALOU trade name and Marks constitute use of a false designation of origin and misleading description and representation of fact.

59. Defendants' conduct is willful and is intended and likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs.

60. Defendants' conduct constitutes trade name infringement and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61. Defendants' conduct is causing immediate and irreparable harm and injury to Plaintiffs, and to the goodwill and reputation associated with the HECHALOU Marks, and will continue both to damage Plaintiffs and to confuse the public unless enjoined by this Court. Plaintiffs have no adequate remedy at law.

62. Defendants' acts constitute federal trade name infringement and unfair competition in the form of passing off, false representation, false advertising, and false designation of origin, all in direct violation of 15 U.S.C. § 1125(a).

63. Defendants' infringement of the HECHALOU trade name and Marks has been and continues to be deliberate, willful, and wanton, making this an exceptional case within the meaning of 15 U.S.C. § 1117.

64. Plaintiffs are entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment interest.

### THIRD CLAIM FOR RELIEF

**Common Law Trademark Infringement**

65. Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs of its Complaint as though fully set forth herein.

66. The HECHALOU trade name and Marks have been used in commerce to market and sell the goods and services of Plaintiffs and their authorized licensees. The HECHALOU trade name and Marks are inherently distinctive and/or have acquired distinctiveness.

67. Defendants have used the HECHALOU trade name and Marks in commerce, without permission from Plaintiffs, in connection with the sale, offering for sale, and advertising of goods or services. Defendants' use is likely to cause confusion or mistake or to deceive consumers into believing that Defendants are still affiliated, connected, or associated with Plaintiffs.

68. Defendants' activities complained herein constitute willful and intentional infringements of the HECHALOU trade name and Marks, conducted with the intent to trade upon Plaintiffs' reputation and goodwill by causing confusion and mistake among customers and the public and to deceive the public into believing that Defendants' goods and services are those of, authorized or approved by, or in any way connected with Plaintiffs.

69. Defendants continue to benefit from the HECHALOU trade name and Marks and the goodwill that was established due to their previous association with Plaintiffs. As a result of Defendants' infringement, Plaintiffs have suffered irreparable injury, loss, and damage to their rights in and to the HECHALOU trade name and Marks, as well as the associated goodwill. This irreparable harm will continue unless Defendants are preliminarily and permanently enjoined by this Court from further violation of Plaintiffs' rights, for which Plaintiffs have no adequate remedy at law.

70. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their infringement.

71. Plaintiffs are entitled to preliminary and permanent injunctive relief, as well as to actual damages and Defendants' profits.

# FOURTH CLAIM FOR RELIEF

### (Violation of California Bus. & Prof. Code § 17200)

72. Plaintiffs repeat, reallege, and incorporate by reference the preceding paragraphs of their Complaint as though fully set forth herein.

73. The HECHALOU trade name and Marks have been used in commerce to market and sell Plaintiffs' goods and services. The HECHALOU trade name and Marks are inherently distinctive and/or have acquired distinctiveness.

74. Without Plaintiffs' consent, Defendants have used the HECHALOU trade name and Marks in commerce or in connection with the sale, offering for sale, advertising, or promotion of their goods and services offered, which is likely to cause confusion, or to cause mistake or to deceive consumers as to Plaintiffs' affiliation, connection, association, sponsorship, or approval of Defendants' business, in violation of California law.

75. Defendants' acts have been committed deliberately and willfully, with knowledge of Plaintiffs' exclusive rights and goodwill in the HECHALOU trade name and Marks, as well as bad faith and the intent to cause confusion, or to cause mistake and/or deceive consumers as to Plaintiffs' affiliation, connection, association, sponsorship, or approval of Defendants' business.

76. Plaintiffs are likely to succeed on the merits of the claim for Defendants' continued use of the HECHALOU trade name and Marks. As a result of Defendants' unfair competition, Plaintiffs have suffered and will continue to suffer substantial and irreparable injury, loss, and damage to their rights in and to the HECHALOU trade name and Marks, as well as the associated goodwill, for which it has no adequate remedy at law.

77. If not restrained, Defendants will have unfairly derived and will continue to unfairly derive income, profits, and business opportunities as a result of their acts of infringement.

///

78. As the acts alleged herein constitute infringement of the HECHALOU trade name and Marks, and Plaintiffs have no adequate remedy at law, Plaintiffs are entitled to preliminary and permanent injunctive relief, the issuance of which does not violate public policy, as well as to other remedies and penalties set forth in California Business and Professions Code §§ 17200 et seq.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that judgment be entered:

1. On Count One:

    a. For recovery of all damages allowed under 15 U.S.C. § 1117, including but not limited to compensatory damages suffered as a result of Defendants' acts of infringement, disgorgement of Defendants' profits, enhanced profits or damages, reasonable attorneys' fees, costs, and prejudgment interest, as well as the issuance of preliminary and permanent injunctive relief restraining Defendants, and all other acting in concert with them, from using the HECHALOU trade name or Marks, or marks that are colorable imitations of or confusingly similar to them; and

    b. Pursuant to 15 U.S.C. § 1118, an order requiring Defendant to deliver or destroy all materials containing, referring to, or displaying the HECHALOU trade name or Marks, including but not limited to Defendants' advertising, goods, products, packages, wrappers, signs, prints, labels, or any other matter that infringes on Plaintiffs' rights in the HECHALOU trade name and Marks.

2. On Count Two:

    a. For recovery of all damages allowed under 15 U.S.C. § 1117, including but not limited to compensatory damages suffered as a result of Defendants' acts of infringement, disgorgement of Defendants' profits, enhanced profits or damages, reasonable

attorneys' fees, costs, and prejudgment interest, as well as the issuance of preliminary and permanent injunctive relief restraining Defendants, and all others acting in concert with them, from using the HECHALOU trade name or Marks or marks that are colorable imitations of or confusingly similar to them, and from otherwise representing themselves to the public as a licensee, franchisee, or affiliate of Plaintiffs.

3. On Count Three:
   a. For compensatory damages in an amount to be proven at trial;
   b. For consequential, special, incidental, and restitution damages in an amount to be proven at trial; and
   c. For preliminary and permanent injunctive relief to prevent Defendants from using the HECHALOU trade name and Marks in any manner that is likely to create the impression that Defendants' goods or services are those of, sponsored or approved by, or in any way connected to Plaintiffs.

4. On Count Four:
   a. For restitution damages in an amount to proven at trial; and
   b. For preliminary and permanent injunctive relief to prevent Defendants from using the HECHALOU trade name and HECHALOU Marks, or marks that are colorable imitations of or confusingly similar to them.

5. For such other and further relief as the Court may deem just and proper.

///
///
///
///
///

MORTENSON
TAGGART
ADAMS LLP

16
COMPLAINT

## JURY TRIAL DEMAND

Plaintiffs hereby request a jury trial for all issues so triable.

DATED: May 30, 2025         MORTENSON TAGGART ADAMS LLP

By: _____/s/ Kevin A. Adams_____
Kevin A. Adams
Sandra G. Gibbs
Attorneys for YI-SHENG FANG and
HECHALOU INTERNATIONAL LLC

MORTENSON TAGGART ADAMS LLP